UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
KEVIN R. KELLY,                     )
                                    )
       Plaintiff,                   )
                                    )
   v.                                )   Civil Action No. 05-0900 (PLF)
                                    )
DARRYL HAIRSTON,                    )
Acting Administrator, United States )
Small Business Administration,[1]   )
                                    )
       Defendant.                   )
_____)


OPINION

       This matter is before the Court on defendant's motion for summary judgment with respect to Count IV of plaintiff Kevin Kelly's first amended complaint ("Mot."). The Court previously dismissed without prejudice all of the other counts in Mr. Kelly's first amended complaint. See Kelly v. Barreto, Civil Action No. 05-900, Order at 1 (D.D.C. Mar. 31, 2006). Thus, only Count IV remains before the Court. Upon consideration of defendant's motion, Mr. Kelly's opposition thereto ("Opp."), and defendant's reply ("Reply"), the Court will grant in part and deny in part defendant's motion for summary judgment.

       Mr. Kelly was employed as a Business Opportunity Specialist ("BOS") by the United States Small Business Administration ("SBA") from September 1998 until July 2004, when he was terminated. The duties of a BOS include "analyz[ing] applications [from firms] to

---

[1] Plaintiff's first amended complaint names former Administrator Hector Barreto as the party defendant. The Court now substitutes his successor, Acting Administrator Darryl Hairston, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

determine whether they [are] eligible for the small disadvantaged business program." Opp. at 2. In Count IV, Mr. Kelly claims that he was terminated because he engaged in prior protected activity and because of his race (African American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). He also claims that he was terminated because of his age (he was 43 years old when he was terminated) in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA").

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The Court must "eschew making credibility determinations or weighing the evidence" on a motion for summary judgment. Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). He is required to provide evidence that would permit a reasonable jury to find in his favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

## II.  TITLE VII CLAIMS

The Court finds that there are genuine issues of material fact in dispute with respect to Mr. Kelly's claims of unlawful retaliation and discrimination on the basis of race under Title VII. The SBA therefore is not entitled to judgment as a matter of law on those claims; they must be tried or settled.

III.  AGE DISCRIMINATION CLAIM

*A. Legal Framework*

The ADEA provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Because he offers no direct evidence of age discrimination, Mr. Kelly's age discrimination claim must be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Barnette v. Chertoff, 453 F.3d 513, 515 (D.C. Cir. 2006).  Under that framework, a plaintiff must first establish a prima facie case of discrimination.  Doing so creates a rebuttable presumption of discrimination and "triggers the employer's burden to produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason." Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004).  If the employer meets this burden, then all presumptions drop away and the Court must decide "whether intentional discrimination may be inferred from all the evidence," including any evidence that the employer's asserted reason is pretextual.  Id.

As the D.C. Circuit has explained, however, "the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas" at the summary judgment stage if (1) the plaintiff has suffered an adverse employment action, and (2) the defendant has asserted a non-discriminatory reason for its behavior. Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).  Rather, in those circumstances,

> the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [age]?

Id.

This is a Brady case. Mr. Kelly suffered an adverse employment action when he was terminated, and the SBA has asserted a non-discriminatory reason for terminating him. Specifically, the SBA maintains that it terminated Mr. Kelly because Mr. Kelly's performance was deemed "Unacceptable" (one level below "Minimally Successful" in the SBA's evaluation system) by supervisor Leo Sanchez in the summer of 2003; Mr. Kelly thereafter was placed on a Performance Improvement Plan ("PIP"); and Mr. Kelly failed to meet the requirements of the PIP. See, e.g., Mot. at 19-21.[2] Accordingly, the Court will "turn directly to the central issue: whether [Mr. Kelly] produced evidence sufficient for a reasonable jury to find that the [SBA's] stated reason was not the actual reason and that the [SBA] intentionally discriminated against" him based on his age. Brady v. Office of the Sergeant at Arms, 520 F.3d at 495.

---

[2]  According to the SBA, "[o]n June 11, 2003, on his mid-year review, Mr. Kelly received an 'Unacceptable' rating in Critical Elements 1, 2, and 3 on his performance evaluation." Defendant's Statement of Material Facts ¶ 17 (citing Mot., Ex. 6, Letter from Leo Sanchez to Kevin Kelly Instituting PIP at 1 (June 11, 2003) ("PIP Letter") ("This letter is to inform you that as a result of your performance in three (3) out of five (5) critical elements of your position being at the 'Unacceptable' level I am giving you an opportunity to improve by placing you on a formal 120 calendar day performance improvement period (PIP).")). Mr. Kelly "denies that he received an unacceptable rating on June 11, 2003." Plaintiff's Statement of Material Facts ¶ 17. That denial has no effect on the Court's analysis, however, because Mr. Kelly neither offers evidence to contradict the PIP Letter on this point, see L. Civ. R. 7(h)(1), nor identifies any reason to doubt its authenticity or veracity. (Indeed, Mr. Kelly's papers fail to address this purported dispute at all.) Thus, Mr. Kelly's bare denial does not create a genuine dispute as to whether Mr. Sanchez decided that Mr. Kelly's performance was "Unacceptable" in June 2003.

Mr. Kelly claims that the SBA discriminated against him on the basis of his age – as noted above, he was 43 years old when he was terminated – by treating all of his co-workers, including those who were younger than him, in a more favorable manner than it treated him.[3] He offers four main examples of this alleged disparate treatment.  According to Mr. Kelly, the SBA: (1) placed him on a PIP and terminated him even though he performed as well or better than the other BOSs, see Opp. at 15, 19; (2) required him to meet objective performance standards, but did not require the other BOSs to meet those standards, see Opp. at 19; (3) scrutinized his work more closely than the work of other BOSs, see id. at 8; and (4) prevented him from attending a training session that all of the other BOSs were permitted to attend.  See id. at 13-14.  From these allegations, Mr. Kelly argues that a reasonable jury could conclude that the SBA's performance-based explanation for terminating him is pretextual and that the SBA in fact terminated him at least in part because of his age.

---

[3]     Mr. Kelly also offers two other reasons a reasonable jury could conclude that the SBA discriminated against him.  Neither merits more than a brief discussion.  First, Mr. Kelly argues that the burdensome nature of the PIP on which he was placed suggests discriminatory animus.  See Opp. at 19.  The Court disagrees.  The PIP's requirements were identical to the generally applicable standards for BOSs except that some elements (such as the number of times "supervisory intervention" would be tolerated) were pro-rated to reflect the fact that the PIP governed a 120-day period rather than a full year.  See Reply at 6-7.  And contrary to Mr. Kelly's assertions, see Opp. at 11, the PIP did – like the generally applicable standards – contemplate that tardiness would be excused under certain circumstances.  See PIP Letter at 7.

Second, Mr. Kelly argues that a reasonable jury could infer discriminatory animus from the fact that Leo Sanchez, an SBA supervisor, signed the letter proposing Mr. Kelly's termination, even though Mr. Sanchez was no longer Mr. Kelly's supervisor at the time he signed the letter.  See Opp. at 19-20.  According to the SBA, however, Mr. Sanchez signed the letter only because "Mr. Sanchez was Mr. Kelly's supervisor during the PIP, and Mr. Kelly's termination was based upon his failure to meet the goals of his PIP."  Reply at 11.  In any event, even if another SBA official should have signed the letter, the Court cannot conclude that such a minor procedural irregularity gives rise to an inference of age discrimination under the facts of this case.  See Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1119 (10th Cir. 2007).

"To raise an inference of age discrimination by showing that a younger person was favored, a plaintiff must point to a worker with a 'significant' or 'substantial' difference in age." Beeck v. Federal Express Corp., 81 F. Supp. 2d 48, 54 (D.D.C. 2000) (citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996)). "To be 'significant' or 'substantial,' the relevant age difference usually must be ten years or more." McNally v. Norton, 498 F. Supp. 2d 167, 181 n.14 (D.D.C. 2007). According to the parties' papers, at the time Mr. Kelly was terminated only three of his fellow BOSs were younger than he was: Tracey Ebb-Murphy, Salone Clary and Dominique Smith. See Defendant's Statement of Material Facts ¶¶ 5-10.[4] Of these three, two are not *significantly* younger than Mr. Kelly: Ms. Ebb-Murphy is only one year younger, and Mr. Clary is only two years younger. Thus, even if Ms. Ebb-Murphy and Mr. Clary were treated more favorably than Mr. Kelly, no inference of discrimination would be warranted on that basis. Ms. Smith is six years younger than Mr. Kelly; thus, whether she is "significantly younger" for purposes of the ADEA is a closer question. Fortunately, the Court need not answer it. Even assuming the answer is "yes," and even assuming that Mr. Kelly's four blanket allegations about the favorable treatment afforded to *all* of his colleagues can be construed as specific allegations about favorable treatment afforded to Ms. Smith, a reasonable jury still could not conclude that the SBA's performance-based explanation for terminating Mr. Kelly is pretextual and that "age was a determining factor in the disputed employment decision." Forman v. Smithsonian Inst., 271 F.3d 285, 292 (D.C. Cir. 2001).

---

[4] Indeed, all but two of the BOSs were between the ages of 41 and 46 in 2004. Only Jorge Riveraechavarria, who was 58, was more than a few years older than Mr. Kelly, and only Dominique Smith, who was 37, was more than a few years younger than Mr. Kelly. See Defendant's Statement of Material Facts ¶¶ 5, 10.

*B. Mr. Kelly's Allegations*

1. Mr. Kelly Performed As Well Or Better Than His Colleagues

Mr. Kelly claims that he was placed on the PIP and terminated even though he performed as well or better than his colleagues, and that this fact suggests that he was terminated because of his age rather than his performance. See Opp. at 19. To support this argument, Mr. Kelly notes that (1) he received a "Minimally Successful" rating for the October 2001 to September 2002 rating period; (2) other BOSs (including Ms. Smith) received "Minimally Successful" ratings for the October 2002 to September 2003 rating period; and (3) only he was placed on a PIP and ultimately terminated. See Opp. at 15. Unfortunately for Mr. Kelly, none of these undisputed facts undermine the SBA's performance-based explanation; indeed, they are perfectly consistent with it. As noted above, the SBA claims that Mr. Kelly was placed on the PIP in June 2003 because his performance, *unlike the performance of Ms. Smith or any other BOS*, was deemed "Unacceptable" for the period of October 2002 to June 2003, and that Mr. Kelly was terminated in July 2004 because he, *unlike Ms. Smith or any other BOS*, failed to meet the goals of a PIP. See Reply at 5.

Similarly, Mr. Kelly argues that he screened more cases and had fewer overdue applications than his fellow BOSs did, and that this fact suggests that he was terminated because of his age rather than his performance. See, e.g., Opp. at 7, 19. This argument appears to be based on three items of evidence: (1) Mr. Kelly's performance evaluation for the period of October 2001 to September 2002, see Opp., Ex. 10; (2) excerpts from Mr. Riveraechavarria's and Barbara Seldon-Dotson's performance evaluations for the same period, see id., Ex. 11; and (3) an e-mail to the BOSs from supervisor Leo Sanchez dated April 19, 2004. See id., Ex. 26.

These exhibits show that Mr. Riveraechavarria and Ms. Seldon-Dotson received higher ratings than Mr. Kelly for the 2001-2002 review period even though they screened fewer cases than Mr. Kelly did, see id., Exs. 10, 11, and that Mr. Kelly had fewer overdue applications at the end of April 2004 than some of his colleagues did (though Ms. Smith had fewer). See id., Ex. 26.[5] They do not, however, undermine the SBA's performance-based explanation for Mr. Kelly's termination or support an inference of age discrimination.

To begin with, these same exhibits offer an obvious non-discriminatory explanation for why Mr. Kelly received a lower ranking than BOSs who screened fewer cases during the same period: he worked too slowly. See Opp., Ex. 10 at 2 (explaining that although Mr. Kelly screened about 200 cases during the review period, his "average time to screen cases was 40 days[,] [t]wenty-five days over the [applicable] regulatory requirements . . . [and] well over the office average [of 13 days]").[6] Notably, Mr. Kelly does not dispute these factual assertions or argue that efficiency was an unimportant part of his job. Moreover, the two BOSs who received higher ratings despite screening fewer applications were either older than Mr. Kelly

---

[5] Exhibit 10 indicates that Mr. Kelly screened about 200 cases during the review period and earned a "Minimally Successful" rating. Exhibit 11 indicates that Mr. Riveraechavarria and Ms. Seldon-Dotson screened 152 cases and 180 cases, respectively, and received ratings above "Minimally Successful." Exhibit 26 indicates that Mr. Kelly had six overdue applications at the end of April 2004, and that some other BOSs (including Ms. Baker and Mr. Clary) had significantly more overdue applications, while some other BOSs (including Ms. Seldon-Dotson and Ms. Smith) had significantly fewer overdue applications.

[6] It is apparent from the parties' papers that BOSs are evaluated according to how quickly and accurately they perform two different tasks: "screening" cases and "processing" cases. Thus, it bears noting that the same exhibits on which Mr. Kelly relies to demonstrate that he *screened* more cases than Mr. Riveraechavarria and Ms. Seldon-Dotson also indicate that he *processed* fewer cases than Mr. Riveraechavarria and Ms. Seldon-Dotson during the same time period, see Opp., Exs. 10, 11 – further undermining his argument that the SBA's performance-based explanation for terminating him is unworthy of credence.

(Mr. Riveraechavarria), or the same age as Mr. Kelly (Ms. Seldon-Dotson) – making it unreasonable to infer that age discrimination played a role in Mr. Kelly's relatively poor evaluation.  Finally, even if these exhibits support Mr. Kelly's claim that he performed as well or better than some BOSs, they do so only with respect to two time periods: October 2001 to September 2002 and April 2004.  As a result, they do nothing to undermine the SBA's claim that Mr. Kelly was terminated because he failed to perform at an acceptable level from October 2002 to June 2003 (when he was placed on the PIP) and from June 2003 to February 2004 (when he was terminated for failure to comply with the PIP).  See Reply at 7-8.

### 2. Only Mr. Kelly Was Evaluated According to Objective Standards

Mr. Kelly also claims that a reasonable jury could disbelieve the SBA and conclude that the agency discriminated against him because only he was evaluated under objective performance standards.  See Opp. at 19.  There is simply no evidence for this assertion beyond Mr. Kelly's self-serving, conclusory statements and unsubstantiated allegations.  See, e.g., Mulhern v. Gates, 525 F. Supp. 2d 174, 186 (D.D.C. 2007) (self-serving, conclusory statements and unsubstantiated allegations do not create genuine disputes) (citing Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001); Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Johnson v. WMATA, 883 F.2d 125, 128 (D.C. Cir. 1989)).  To the contrary, the record suggests that the SBA used the same forms, procedures and detailed objective criteria for evaluating all of the BOSs during all of the relevant time periods.  See, e.g., Opp., Ex. 25 (BOS performance evaluations for 2002-2003).

### 3. Mr. Kelly Was Subject to More Work-Related Scrutiny and Interference

Though it is not entirely clear, Mr. Kelly seems to believe that he was subject to more work-related scrutiny and interference than Ms. Smith, see Opp. at 8, and that this disparate treatment supports an inference of age discrimination. Mr. Kelly, however, fails to identify a single example of the SBA subjecting Ms. Smith's work to less scrutiny. In fact, he specifically alleges preferential treatment of only one BOS: Mr. Riveraechavarria. See Opp. at 6-7. But given the fact that Mr. Riveraechavarria is significantly older than Mr. Kelly, see *supra* note 4, it is difficult to see how such allegations support Mr. Kelly's ADEA claim.

### 4. Mr. Kelly Was Not Allowed To Attend a Training Session

Finally, Mr. Kelly argues that a reasonable jury could disbelieve the SBA and conclude that he suffered age discrimination because he was prevented from attending a training session that all of the other BOSs were permitted to attend. The Court disagrees. Attacks on employers' nondiscriminatory reasons "must always be assessed in light of the total circumstances of the case." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1291 (D.C. Cir. 1998) (*en banc*). According to Mr. Kelly, the agency permitted all of the BOSs except for him – including not only the younger BOSs, but also several BOSs who were approximately the same age as Mr. Kelly or older than Mr. Kelly – to attend the training session. See Opp. at 14. Under those circumstances, a reasonable jury could conclude that Mr. Kelly was singled out by the SBA. But a reasonable jury could not conclude that he was singled out *on the basis of his age* because there is no evidence to suggest that age played a role in the SBA's decision as to who would and who would not be permitted to attend the training session.

In sum, because Mr. Kelly has failed to identify evidence from which a reasonable jury could conclude that he suffered age discrimination, the SBA is entitled to judgment as a matter of law on Count IV's ADEA claim. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 31, 2009